Thank you, Your Honor. May it please the Court, my name is John Egbert. I represent the Salt River Project Agricultural Improvement and Power District, the defendant employer in this litigation. Unless there are questions, I would just like to make a couple brief points with respect to the two principal arguments in this appeal. There are two bases on which the district court judge granted summary judgment, either one of which is sufficient independently to warrant summary judgment. The first deals with whether or not Mr. Rohr presented any evidence or sufficient evidence to establish that his impairment of diabetes, type 2 diabetes, substantially limited a major life activity. And the two major life activities, as it turns out, that he relied on were, one, working, and two, eating. And the ---- You don't argue that eating may be one of the important life considerations? We are not arguing, Your Honor, that eating is not a major life activity for purposes of this summary judgment motion. We did concede that issue. Pardon me? Is there some other area in which you would not concede? Well, yes, there is an area in terms of the substantial limitation on that major life activity. No, but forget the substantial limitation. In terms of this requirement, you're not arguing that there is any way that eating would fall outside the line in terms of what's a material requirement for survival. It's another way of putting one of these considerations. Again, Your Honor, we are not arguing that it's not a major life activity. I wouldn't pursue that if I were you. I'm sorry, Your Honor. I'm having a hard time doing that because we have a case saying it is. Yes, Fraser acknowledged that it is. The reason why we say that the reason summary judgment was appropriate on the issue of whether or not there's a disability at all here in this case is because the Supreme Court's decision makes it very clear and sudden that you do take into consideration medication or other mitigating measures that the individual is able to take. Yes, but in this instance, the mitigating measures are the reason essentially that he needs accommodation. In other words, he – if he – it's not – the mitigating measures themselves are interfering with his ability to do his job without some accommodation. No, Your Honor. The record shows that his disability – his impairment, the diabetes, does require him to have some limitations on his work. And those were the ones that his doctor said, you know, you can't work longer than eight or nine hours. You can't – He has to be able to eat at certain times and he has to be able to not skip meals and he has to – I mean, in terms of eating in particular. I mean, there are things having to do with eating. Yes. The evidence in the record about eating were essentially three. I can't eat large meals. I can't skip meals. And I have to eat – you know, I have to be able to have a snack, you know, regularly so that I kind of spread out my eating. Those were the aspects of the record – in the record that he addressed in terms of this regimen that he has to go through. How is this different from Frazier as to the eating? It is substantially different, Your Honor. And first of all, the court in Frazier emphasized significantly the fact that not only must he – the Frazier in that case, must she eat certain foods or not eat certain foods, but she must carefully assess her blood sugar before putting anything into her mouth. Indeed, the court said, quote, we cannot – she cannot put a morsel of food in her mouth without carefully assessing whether it will tip her blood sugar out of balance. End quote. The court said that not only is she required – there's no margin of error in the record for Frazier in terms of eating anything, but the court also said even if she's very diligent in doing all of that, she's still not successful. In our case, there's two very significant differences. There's no indication at all that Mr. Rohr is in that no safe margin of error situation that Frazier was in, in terms of eating. For all we know, because the record doesn't address it, he put on no evidence in terms of that he could have an apple pie with Alamode after dessert and it could still keep him within as long as he tested his blood sugar. And there's no indication that he's at that same kind of brittle, tight regimen that Frazier was in that the court went into quite some detail in describing. It's a very detailed letter which explained that he has to abide by his regimen exactly or else he's going to have, if not short-term problems, long-term problems, and he was very specific about that. Your Honor, it was he was very specific in saying that he can't eat large meals and that he can't skip meals. But in terms of eating, he didn't say anything in terms of I can't eat certain foods. He didn't say anything about... It's a very demanding regimen that must be done every day. It's like this treatment has taken first priority role in my life and everything else gets scheduled around it. Every day I have to plan blood testing, medications and food intake around the day's schedule. I sometimes become weak and dizzy without warning. Well, this passes quickly after eating something. If I violate my diet for more than a meal or two, my blood sugar goes too high, which is bad for me and aggravates my condition. On the other hand, if I skip the meal, the result could be even worse, et cetera. He was pretty specific. Yes, Your Honor. But in terms, for example, one of the statements you just read indicates that if I violate my diet for more than a meal or two, that's vastly different from... He may not be able to normally eat metabolized food and stay within acceptable ranges of blood sugar without the assistance of insulin. In other words, another medication is designed to lower blood sugar levels. But that's... He has to be able to take the medication, which is another impact on... But that's simply saying that if I take my medication, as Sutton indicates, then the effects of my diabetes are under control. But he has to be able to take the medication, so that affects whether he can travel and how he can travel and so on. That doesn't go to eating, Your Honor. Traveling doesn't in terms of... But the fact that it is his metabolism and eating that creates these problems. Your Honor, essentially, if the fact that he, like all diabetics, need to balance their eating, their activity, and their medication, is sufficient to substantial limit, then all diabetics are going to... I think it's a question of fact for the jury to decide. Because there has to be some evidence, Your Honor. Some evidence. And we take it most favorable to the non-moving party. We draw all reasonable inferences in his favor. This is summary judgment. It's not a trial, not a bench trial or anything else. Summary judgment. He presented, as you just said, some evidence. It's not just some evidence either. As Judge Berzon just went through it, it's pretty good evidence. Well, Your Honor, jury may agree with you. I understand that what you're suggesting, that this is summary judgment level, and there has to be a situation where there's essentially no reasonable juror could find based on... I don't know about my colleagues, but I don't know that I can say that. Okay. Our position would be that this case is vastly different from the Fraser case. And I think that if we're going to say that all that's required is what Mr. Rohr presented, then essentially what we're saying is that it always goes to the jury. There's no way to... No. I guess what you're saying is that he presented, in summary judgment lingo, is that he presented nothing more than a mere scintilla. Yes. Of evidence. That essentially what he described was... All right. It's for us to decide whether what he presented was more than a mere scintilla. And in Fraser, the court was very careful to say, we're not inviting everybody that's under some dietary restrictions to claim a disability under the Americans with Disabilities Act. This is a situation where he admittedly has dietary restrictions, but the result of his fact that he's taking the medication allows him to keep all that in control. And he doesn't have... Not unless he follows the dietary restrictions. Yes. Isn't that the fundamental difference between this and Sutton? In other words, in Sutton, these people could put on their glasses and they could see like anybody else. This person could take his insulin, but he still can't eat like anybody else. But a mitigating... Eating carefully like that is just another mitigating measure. And so the question is, does that mitigating measure substantially limit his life activity? It's a mitigating measure that is intimately related with the physiology of the whole problem. He has a metabolism problem that affects his ability to absorb nutrients in a normal way. So it's not fortuitously related to eating. It's directly related to eating. Your Honor, I guess I've done my best to present the argument with the facts, and I'm going to now move on to the second argument. Okay. The second argument. Next argument. I mean, you're in great shape here. You don't have an opponent, so you ought to be... I appreciate you putting that into focus, Your Honor. The second issue, the second basis for summary judgment in the district court, was the issue of his inability to satisfy the requirement of obtaining a respirator certification. And the facts are undisputed. And I want to start off by pointing out that this case is different than the Bates decision, the Morton decision, and the Cripe decision, all of which involved the safety qualification standards that were designed by the employer, as opposed to they were not situations, for example, in the Bates decision. It was a situation where the DOT had regulations in terms of the hearing standard, but those hearing standards admittedly applied to drivers of different vehicles, not the drivers of these vehicles. But the employer had decided we're going to adopt those same standards for these other vehicles. In this situation, we've got a, the record is undisputed, that this program by SRP was implemented as a result of compliance with OSHA's certification, respiratory certification requirement. They're required to have this program. They're required to, you know, set up a situation or the requirements for the respirators for those jobs where it could reasonably be necessary or routinely necessary. And then they need to follow that up with medical examinations. All of that's specified under those OSHA regulations to which we cite. So that's an important distinction. So when it comes to it, how do you read this regulation that it requires this particular employer to, for these fellows who are involved in welding, this regulation requires them to have a requirement, a job requirement, that they must pass a respirator test. And the one that you happen to give. The regulation requires SRP to develop a program that sets, that states when and which employers, or employees, excuse me, are required to wear respirators and what kind of respirators. Well, you absolutely cannot tell from the record is whether, the OSHA standards do not require this test, whatever test you're using. And we don't know what test you're using. And we don't know how the test is related to the ability to wear a respirator, in fact. I mean, you can't tell from this record, and I don't know because I am curious, as to whether his blood pressure was a problem on the test or on using the respirator. You can't figure that out at all. Number one, what's the answer to that? Do you have any record about that? I don't know what level of blood pressure precluded him from taking the test. He said that. He said, she just told me I couldn't take it. She didn't tell me what the level was or why I couldn't take it. What is clear in the record, Your Honor, is that he, in his particular job as a welding metallurgy specialist, that it was, that he did come into, first of all, that there are conditions that are possible in his job that could arise unexpectedly at any time that would require him to wear a respirator. The record on that is really flimsy. I'm sorry? What is the record on that? The record is his. There's one affidavit and one sentence. Is that it? Well, no. It's his testimony. It's his deposition testimony where he said... He said, in 23 years, I've never had to do it. He says, I've never had that emergency that's possible. I've never had it come up. I've never had to do that. But he does say, in response to the question, and there's always the possibility that during your work as a welding specialist that those conditions did arise unexpectedly, correct? I only suppose that the logic of having me have this, I'm sorry, I only suppose that was the logic of having me have the certification. Yes. So he acknowledges that it's possible that it arises unexpectedly at any time in his particular job, and he's fortunate that he's never had to do it, but that doesn't mean just because an employer has been successful in avoiding those emergency situations coming up, that it's not a business-related need in order to have somebody... Do you agree, first of all, that after Bates, the burden on all of this is on you? The burden is on the moving party here. No, it's on the employer on this issue, right? Right. The employer, you. Yes. Okay. All right. To demonstrate that, in fact, this is a business necessity. Yes, Your Honor. And then when you couple his, I think it's undisputed that the situation could arise in his specific job, that the emergency need to use a respirator could arise, and then you couple that with the undisputed affidavit that says that if he's not prepared or able to use a respirator... He said he wasn't. You see, that's the part I don't get. All you said was, all I see in the record is that there was a test to certify him, and they didn't let him take the test. Your Honor, there's nothing in the record that he disputes our position. He says from the... Your position is that he isn't certified because you didn't let him take a test. But your position, as I understand it, is not that he couldn't use the respirator. You never said that. Well, he can't use the respirator because part of the test that he's supposed to take in order to certify requires him to have, you know, meet those requirements. He's unable to. Would you run through for me again why in this disability accommodation case it matters at all whether or not he can use a respirator? Your Honor, it's not really an accommodation case. It's not under ADA? I missed it. It is under the ADA, but the part of the ADA that requires accommodation is not strictly at issue here in this particular summary judgment motion. Because he did come in and say, I need accommodation. All those accommodations were granted to him. And as a result of that, the employer determined that he... I'm sorry, Your Honor. He fired him. That's what he did as a result. No. The employer determined that he couldn't do the essential functions of his job with those accommodations, so he either needed to bid into a different job, retire, or claim disability. We're not relying on any of that now. That's true. I mean, there's no proof. As I guess Judge Bergeron is saying, there's no proof of that. We don't know if he could use the respirator or not, and we don't know if he couldn't get a substitute to use it and take the test, and we don't know what his blood pressure was or whether it could be regulated with more Darvon or whatever pills they're using these days. Your Honor, the record is we assert in our moving papers that he was unable to successfully get certified, and he acknowledges in his deposition that he was not able to be certified, even though he had... Well, he said that he couldn't be certified. All right, but let's go to Bates, okay? In Bates, there's been a remand. They didn't decide for... We didn't decide for the employer. Why is that? The employer said, well, he couldn't pass our test, and we didn't say, well, that's it, you win. We said, okay, what's your test? How is it related? How is it connected to what he actually has to do? Now, that's what you don't have here. We don't know what your test is. We don't know what it has to do with whether you could actually use a respirator. We also don't know, for example, whether given his other accommodations, the actual emergencies could arise. My understanding is that the things that he's not going to do anyway if he's accommodated are the things that would lead to the need to have a respirator, i.e. work in hot, dangerous places under difficult circumstances. That's what, if he's accommodated, he's going to do anyway. But leaving that aside, there's no... What you're not acknowledging is that this is a test. It's not the use of the respirator itself. We don't see the connection. There is nothing in the record that tells us the connection between the two. Your Honor, the safety standard that we're talking about here is the requirement that he be... The one that's stated in his job description is that he be respirator certified. Right. And suppose the way you get respirator certified is you have to jump up and down 15 times. We don't know. We don't know what you're doing to make somebody respirator certified. Maybe the respirator certification requirement is something that he can't do but really doesn't have anything much to do with whether he can use a respirator. Well, Your Honor, that certainly isn't an argument we've been able to respond to because it's never been made by the plaintiff in response for a motion for summary judgment. Perhaps if we would have, if such an argument would have been made, we would have had an opportunity to respond. And it wasn't a necessity of the job. How can you tell? This is a test. It's not the requirement. It's a certification test. Well, and the record is undisputed that he couldn't be certified, and the record is also undisputed that if he's not able to be certified and can't use a respirator, then there's a significant risk of serious injury to himself and to other SRP employees. That's undisputed in this record. Given those two things, I think it's very difficult to be able to say that that's not a business necessity. At the very least, it's a material issue of fact, it seems to me, and that's what summary judgment is all about. Well, Your Honors, we respectfully disagree that there's an issue of fact there. Given the two facts that he's not certifiable with the respirator and two, he must be in order for safety. Well, I think it's very difficult to be certifiable and say on whatever test you're using, which we don't know what it is, he couldn't be certified. But whether that test makes any sense at all, we have no idea. Your Honor, we would be like if you had an adversary. I nevertheless request that the summary judgment be affirmed. All right. Thank you. We appreciate your argument. The matter will be submitted. Okay. Ladies and gentlemen, we're going to take a short ten-minute recess. Thank you. Let me get this out of the way. Watch these stairs, okay? I've never sat at this table over here. Thank you.
judges: Paez, Berzon, Baer